IN THE UNITED STATES DISTRICT COURT FOR THE
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GREGORY MEADE ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case No.:** |
| **v.** ) | |
| ) | |
| SUPERINTENDENT ) | **JURY TRIAL DEMANDED** |
| MIKE SEVILLE ) | |
| In his individual capacity, ) | |
| LEONARD LEVIN, ) | |
| and ) | |
| MAHMOOD ADNAN DURRANI. ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Gregory Meade files this action against Defendants Superintendent Mike Seville, Dr. Leonard Levin, and Dr. Mahmood Adnan Durrani, submitting this Complaint, pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) and all other applicable laws against the Defendants, to vindicate his rights and to seek an award of damages resulting from the pain and suffering by Defendants and an award of punitive damages for the conscious disregard for Mr. Meade's dignity and safety leading to permanent damage to his left hand and right wrist.

## INTRODUCTION

On April 2, 2020, Mr. Meade broke the bones in his left hand. Despite his multiple requests for medical care, what followed for him would be months of pain and inadequate medical treatment, leading up to the second break of the bones in his right wrist in July of 2020.

Even after Mr. Meade broke his right wrist in July of 2020, staff at Haynesville Correctional Center ("HCC") continued to fail to treat Mr. Meade's immense pain, swelling, and deformity in both his left hand and right wrist, even as he filed repeated grievances begging the staff for any medical care. As Mr. Meade continued to suffer, staff at the prison threatened him with pushing back his surgery date and refused to provide him additional medical care.

Accordingly, Mr. Meade brings this action through all applicable state laws and the vehicle of Section 1983 for violations of his right to be free from cruel and unusual punishment, and for the medical malpractice committed against him.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4), as well as under 42 U.S.C. § 1983.

2.

Venue is proper under 28 U.S.C. § 1391(b)(1) because (1) all or a substantial part of all the events and omissions giving rise to Mr. Meade's claims occurred within this District and Division and (2) Defendants reside and transact business in this District and Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.

Plaintiff has exhausted all administrative remedies available to him through the Virginia Department of Corrections and the Haynesville Correctional Facility.

## PARTIES

### 4.

Plaintiff **Gregory Meade** was at all times relevant to this action was a citizen of United States of America, the Commonwealth of Virginia and an offender incarcerated in the Haynesville Correctional Center. Plaintiff is competent to stand trial to defend all claims he has made against Defendants. The facts pertaining to his claims are outlined below in the sections entitled, "Relevant Facts" and "Counts."

### 5.

Defendant **Leonard Levin, MD,** is a United States citizen, and at all relevant times was Mr. Meade's primary medical provider and the ultimate authority as to his medical care while incarcerated at the HCC.

### 6.

Defendant Leonard Levin at all times relevant has acted and will continue to act under color of state law.  At all times relevant, Defendant Leonard Levin was responsible for knowing all applicable laws regarding the constitutionally protections of inmates under the HCC's care, custody, and control.

### 7.

Defendant **Mahmood Adnan Durrani, MD,** is a United States citizen, and at all relevant times, was Mr. Meade's primary medical provider and the ultimate authority as to his medical care while incarcerated at the HCC.

8.

Defendant Mahmood Adnan Durrani at all times relevant has acted and will continue to act under color of state law.  At all times relevant, Defendant Mahmood Adnan Durrani was responsible for knowing all applicable laws regarding the constitutionally protections of inmates under the HCC's care, custody, and control.

9.

Defendant **Mike Seville is** a United States citizen, and at all relevant times was the Superintendent at the HCC. At all relevant times Defendant Seville was the ultimate decision maker in the grievance procedure within HCC, and responsible for all oversight, operations, and administration at the jail authority.

10.

Defendant Seville is being sued in his individual capacity, and at all times relevant, Seville has acted and will continue to act under color of state law.  At all times relevant, Defendant Seville was responsible for knowing all applicable laws regarding the constitutional protections of inmates in HCC's care, custody, and control.

**STATEMENT OF FACTS**

**I.      Mr. Meade breaks his left hand and Defendants Durrani and Levin allow the injury to go untreated for months**

11.

On April 2, 2020, a bone in Mr. Meade's left hand was broken in an altercation with another inmate.

12.

Mr. Meade's left hand was visibly broken and swelled up.

13.

The injury caused Mr. Meade immense pain, and he stated to his medical providers at HCC that he believed he may have fractured the hand.

14.

On April 2, 2020, Mr. Meade was taken to the Riverside Tappahannock Hospital Emergency Room, where he received a medical examination from Dr. Joel Jones.

15.

Dr. Jones ordered an X-ray of Mr. Meade's left hand.

16.

The April 2, 2020 X-ray revealed a fracture in the fifth metacarpal bone in Mr. Meade's left hand, and the reading physician noted that Mr. Meade's left hand was swollen and deformed.

17.

Dr. Jones prescribed a fiberglass splint for Mr. Meade for the next 3-4 weeks, ordered that he elevate his left hand as much as possible, and ordered Mr. Meade be given 975 mg of Tylenol every six hours as needed for pain.

18.

Dr. Jones ordered that Mr. Meade have a follow-up appointment with Dr. Tyler Wind, an orthopedic specialist at Northern Neck Bone and Joint, but Defendant Durrani and Defendant Levin never made any appointment for Mr. Meade with Dr. Wind or any orthopedic specialist.

19.

Upon information and belief, Defendant Levin and Defendant Durrani were aware of and reviewed Mr. Meade's medical records contemporaneously with the medical care that he received for his left hand, including the diagnosis of a fractured metacarpal and prescription for the cast and the recommendation for a follow up with an orthopedic specialist.

20.

Defendant Durrani and Defendant Levin did not inform Mr. Meade that the x-ray revealed that he had fractured the fifth metacarpal in his left hand.

21.

Despite Dr. Jones' prescription that Mr. Meade be afforded pain medication, in the following months, Defendant Durrani and Defendant Levin would repeatedly deny Mr. Meade his pain medication, leaving him to suffer untreated for extended periods of time

22.

On or around April 20, 2020, 3 days prior to the minimum prescribed time Mr. Meade was supposed to remain in the splint, Defendant Levin took Mr. Meade's splint from him, and he never received another splint for his left hand. Mr. Meade's left hand was still visibly unhealed, broken, swelling, and causing Mr. Meade great pain.

23.

In spite of the x-ray that Mr. Meade had received, revealing that he had a fracture in his fifth metacarpal, Defendant Levin informed Mr. Meade that he merely had a sprain and some bruising to his left hand.

24.

Mr. Meade never received another splint, even as he continued to suffer pain, swelling, and deformity in his left hand.

25.

Mr. Meade's left hand was so evidently still broken and unhealed that when Mr. Meade was next in medical on or around early May of 2020 Nurse T.D. Johnson noticed that Mr. Meade's left hand appeared injured and broken.

26.

Mr. Meade explained to Ms. Johnson that his hand had been injured, that he had no follow-up care, and that his splint was taken from him.

27.

In light of the still apparent break in Mr. Meade's left hand, Nurse Johnson ordered an x-ray for Mr. Meade's left hand, and he was x-rayed on May 12, 2020.

28.

The x-ray revealed that Mr. Meade's bone was displaced from proper alignment, showed no bridging or connection, and had not healed properly.

29.

Nevertheless, Defendant Durrani and Defendant Levin refused to follow up with care of Mr. Meade's left hand, and he was never contacted for any additional care. Defendant Durrani and Defendant Levin refused to schedule Mr. Meade for the follow up consult with an orthopedic specialist as ordered by the Riverside Hospital.

30.

Upon information and belief, Defendant Levin and Defendant Durrani were aware of and reviewed Mr. Meade's medical records contemporaneously with the May 12, 2020 x-ray that he received for his left hand.

31.

Defendant Durrani and Defendant Levin did not tell Mr. Meade the results of his May 12, 2020 x-ray, and as a result, he was never made aware that the bone in his left hand was still broken.

32.

Mr. Meade did not receive further medical care for his left hand until October 21, 2020, nearly seven months after it was initial broken and consult was ordered, when he was sent to Northern Neck Bone and Joint to see Dr. Tyler Wind.

33.

On October 21, 2020, Dr. Wind informed Mr. Meade that his left hand had healed incorrectly, and that to fix it he would need the bone re-broken, and two screws and a plate placed inside of it.

34.

Because rebreaking and setting the hand properly would be so invasive and so painful for Mr. Meade, Dr. Wind did not recommend that Mr. Meade have surgery to fix the permanent deformity in Mr. Meade's left hand.

35.

Upon information and belief, had Mr. Meade received the ordered follow up with Dr. Wind within a reasonable time after either his April 2, 2020 X-ray or May 12, 2020 X-ray of his left hand revealed the continuing, unhealed, break, Mr. Meade's left hand could have been properly repaired by surgery.

**II.    Mr. Meade broke his right wrist**

36.

In July of 2020, while his left hand was broken and receiving zero adequate care from these Defendants, another inmate attacked Mr. Meade with a lock, cutting his face and breaking his *right* wrist.

37.

After his right wrist broke, Mr. Meade was taken to Riverside Hospital, where he received a splint for his right wrist and a recommendation for a surgical follow up with an orthopedic surgeon.

38.

Upon information and belief, the orthopedic surgeon recommended and scheduled Mr. Meade for surgery to have a pin placed in his right wrist.

39.

When Mr. Meade returned from Riverside Hospital, he was placed in the Restrictive Housing Unit ("RHU")  for 38 days.

40.

Upon information and belief, Defendant Levin and Defendant Durrani were aware of and reviewed Mr. Meade's medical records contemporaneously with the emergency medical treatment that he received for his right wrist.

41.

Mr. Meade quickly found that the splint was too soft, and that it offered him no support for the fracture of his right wrist. Mr. Meade advised medical staff of this condition immediately.

42.

Mr. Meade was told by HCC healthcare providers that if he asked to go to the hospital he would lose his surgery date for his right wrist.

43.

On August 11, 2020, Mr. Meade's cast broke on his right wrist. His hand was swollen, and he sought medical care.

44.

Mr. Meade was seen by Nurse Jennell, who wrote that his severe medical condition did not constitute an emergency; Mr. Meade's emergency grievance on August 11, 2020, was accordingly denied.

45.

Upon information and belief, Defendant Levin and Defendant Durrani were aware of and reviewed Mr. Meade's medical records contemporaneously with Mr.

Meade's report that his wrist splint was too soft and on August 11, 2020 that his right wrist splint had broken.

46.

Upon information and belief, the failure and refusal of Defendant Levin and Durrani to replace or repair Mr. Meade's wrist splint when it was too soft and eventually broke, exacerbated Mr. Meade's pain and suffering and worsened the condition of his right wrist break.

**III.   The delay to Mr. Meade's surgery**

47.

Mr. Meade was required to be, and was, given a coronavirus test to ensure that he would be allowed to receive surgery to his right wrist. Unfortunately, Defendant Levin failed to submit the coronavirus report to the hospital. Upon information and belief, Mr. Meade's original surgery date was cancelled, and surgery was delayed until August 13, 2020, after a second test was administered.

48.

On August 13, 2020, Mr. Meade received surgery for his right wrist at the Riverside Tappahannock Hospital, during which the surgeons needed to rebreak Mr. Meade's bone and insert two screws into his right wrist rather than the simple pin procedure. Upon information and belief, the altered surgery was necessary in order to correct the damage done by the Correctional Center's deliberate and intentional omissions in treating his injuries and issues with Mr. Meade's splint.

49.

Notably, at this time, some four months after Mr. Meade's left hand was broken and a follow up consult was ordered, Mr. Meade still had not received any treatment or evaluation of his left hand by a specialist. Upon information and belief, without a prior surgical consult or appropriate medical records, surgery on Mr. Meade's left hand could not be completed by the surgeon along with his right wrist.

50.

In spite of his August 13, 2020 surgery, Mr. Meade's pain continued in his right wrist, and in his left hand which never received surgery.

51.

In fact, Mr. Meade's right hand swelled up and began leaking pus less than two days after the surgery, and he had to return to the emergency room on August 15, 2020, at 9:00 PM.

52.

Notably, in spite of the massive swelling to his hand, Mr. Meade's requests to go to the emergency room were ignored until his mother, Donna Meade, on or about August 14, called HCC to complain about the seriousness of his medical condition.

53.

On November 17, 2020, Mr. Meade reported that he had to sit in the segregation unit to recover from his injuries, and not the medical wing.

54.

Not only that, but because of his continuing hand pain, Mr. Meade could not make his bed and had to eat his food "like a dog" because both of his hands were compromised from the left hand break  and right wrist break.

55.

Mr. Meade has difficulty going to the bathroom, brushing his teeth, and showering.

56.

Mr. Meade has ongoing sharp pains and numbness in both of his hands.

57.

Mr. Meade cannot fully extend his right hand to this day because his wrist is swollen and has protruding hardware from the corrective surgery.

58.

Mr. Meade's left hand is permanently disfigured, with the knuckle of his pinky bent and overlapping the knuckle of his ring finger.

59.

Upon information and belief, Defendant Levin and Defendant Durrani received and reviewed each of Mr. Meade's medical records contemporaneously with the medical care that he received at HCC.

IV. **Mr. Meade filed multiple emergency grievances, all of which were summarily denied.**

60.

On August 6, 2020, Mr. Meade submitted an emergency grievance for the immense pain in his right hand stemming from his broken right wrist, begging for surgery.

61.

Mr. Meade's August 6, 2020 emergency grievance was denied.

62.

On August 11, 2020, Mr. Meade submitted an emergency grievance for the pain and swelling that he was experiencing in his right hand stemming from his broken right wrist, and because his splint was broken.

63.

Mr. Meade's August 11, 2020 emergency grievance was denied.

64.

On August 12, 2020, Mr. Meade submitted an emergency grievance for the continued pain and swelling that he was experiencing in his right hand stemming from his broken right wrist.

65.

Mr. Meade's August 12, 2020 emergency grievance was denied.

66.

On August 14, 2020, Mr. Meade submitted an emergency grievance for the immense pain he was experiencing in his right hand stemming from his broken right wrist.

67.

Mr. Meade's August 14, 2020 emergency grievance was denied.

68.

On August 17, 2020, Mr. Meade submitted an emergency grievance on the grounds that he was being repeatedly and continuously denied medical treatment and continued to be in pain.

69.

Mr. Meade's August 17, 2020 emergency grievance was denied.

70.

On August 19, 2020, Mr. Meade submitted an emergency grievance, protesting his placement in the Restrictive Housing Unit after his medication ran out.

71.

Mr. Meade wrote, "I'm going crazy back there."

72.

Mr. Meade's August 19, 2020 emergency grievance was denied.

73.

On November 3, 2020, Mr. Meade submitted an emergency grievance for the ongoing pain that he was experiencing in his left hand.

74.

Mr. Meade's November 3, 2020 emergency grievance was denied.

75.

On multiple occasions, in response to Mr. Meade's emergency grievances and the immense pain, swelling, and deformity that Mr. Meade was experiencing in both of his hands, staff responded by writing that he was to be brought an "ice pack."

76.

In fact, on August 16, 2020, Mr. Meade was forced to file another emergency grievance because even the previously promised ice pack never arrived.

77.

The emergency grievances that Mr. Meade filed repeatedly reveal that in spite of his immense pain in both hands, Mr. Meade continually received no more in the way of treatment than ice and pain killers.

78.

Mr. Meade asked to appeal the denial of each grievance and appealed each when he was given an opportunity to do so. All such appeals were denied.

79.

Upon information and belief, Mr. Meade's grievances were all appealed to Defendant Seville, who received and was aware of each of these grievances. Based on the

information in those grievances which Defendant Seville reviewed, he was aware that Mr. Meade's hands were swollen, deformed, and in pain, at all times relevant to the complaint, and nevertheless deliberately took no action as to the treatment of Mr. Meade.

80.

Based upon information and belief the superintendent had the authority as the head of the entire HCC to either order Meade to the emergency room or at least start the process by requesting that he be sent to the emergency room; instead, Defendant Superintendent Seville did not even visit Mr. Meade or take any further steps that lead to Mr. Meade receiving immediate treatment.

81.

At all relevant times, it was not within the discretion of Defendant Drs. Durrani and Levin to deny Mr. Meade necessary and serious medical care regarding his left hand and right wrist.

## COUNT I
### DEPRIVATION OF EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT BY RECEIVING ACCESS TO ADEQUATE MEDICAL CARE AS TO THE TREATMENT OF HIS LEFT HAND UNDER 42 U.S.C. § 1983
### (Against Durrani and Levin, and Seville in his individual capacity)

82.

Mr. Meade incorporates paragraphs 1 to 81 as if each were set forth verbatim herein to support this Count.

83.

Defendants' acts and omissions in failing to provide adequate and timely medical care constitute deliberate indifference to the serious medical needs of Mr. Meade after his left hand was broken, thereby establishing a violation of the Eighth Amendment of the United States Constitution.

84.

Based upon the facts incorporated into this Count and any other paragraphs this Court deems relevant, Defendants Seville, Levin and Durrani were deliberately indifferent to Mr. Meade's serious medical need, despite fully appreciating his injury and the serious risk of harm posed by his injury. As a result of Defendants' failure to provide adequate medical care, Mr. Meade suffered severe pain and suffering and permanent injury to his left hand.

**COUNT II**
**DEPRIVATION OF EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT BY RECEIVING ACCESS TO ADEQUATE MEDICAL CARE AS TO THE TREATMENT OF HIS RIGHT WRIST UNDER 42 U.S.C. § 1983**
**(Against Durrani and Levin, and Seville in his individual capacity)**

85.

Mr. Meade incorporates paragraphs 1 to 81 as if each were set forth verbatim herein to support this Count.

86.

Defendants' acts and omissions in failing to provide adequate and timely medical care constitute deliberate indifference to the serious medical needs of Mr. Meade after his

right wrist was broken, thereby establishing a violation of the Eighth Amendment of the United States Constitution.

87.

Based upon the facts incorporated into this Count and any other paragraphs this Court deems relevant, Defendants were deliberately indifferent to Mr. Meade's serious medical need, despite fully appreciating his injury and the serious risk of harm posed by his injury. As a result of Defendants' failure to provide adequate medical care, Mr. Meade suffered severe pain and suffering and permanent injury to his right wrist.

**COUNT III**
**MEDICAL MALPRACTICE AS TO MR. MEADE'S LEFT HAND**
**(State law claim against Durrani and Levin)**

88.

Plaintiff fully incorporates paragraphs 1 through 81 and any paragraph this Court deems relevant as fully stated herein to support this Count.

89.

Based upon the facts incorporated into this Count, and any other paragraphs this Court deems relevant, Defendants Durrani and Levin committed medical malpractice by violating the standards of care applicable to both the assessment and treatment of Mr. Meade's left hand, while also demonstrating, at minimum, medical negligence regarding Mr. Meade's harms.

90.

As a result of Defendant Durrani and Levin's negligence Mr. Meade suffered, and continues to suffer, permanent disfigurement of his left hand, pain and suffering, and other permanent injury.

## COUNT IV
## MEDICAL MALPRACTICE AS TO MR. MEADE'S RIGHT WRIST
### (State law claim against Durrani and Levin)

91.

Plaintiff fully incorporates paragraphs 1 through 81 and any paragraph this Court deems relevant as fully stated herein to support this Count.

92.

Based upon the facts incorporated into this Count, and any other paragraphs this Court deems relevant, Defendants Durrani and Levin committed medical malpractice by violating the standards of care applicable to both the assessment and treatment of Mr. Meade's right wrist, while also demonstrating, at minimum, medical negligence regarding Mr. Meade's harms.

93.

As a result of Defendant Durrani and Levin's negligence Mr. Meade suffered, and continues to suffer, permanent disfigurement of his right wrist, pain and suffering, and other permanent injury.

**COUNT V**
**GROSS NEGLIGENCE AS TO MR. MEADE'S LEFT HAND**
**(State law claim against Durrani and Levin)**

94.

Plaintiff fully incorporates paragraphs 1 through 81 and any paragraph this Court deems relevant as fully stated herein to support this Count.

95.

Based upon the facts incorporated into this Count, and any other paragraphs this Court deems relevant, Defendants Durrani and Levin committed medical malpractice by violating the standards of care applicable to both the assessment and treatment of Mr. Meade's left hand.

96.

Defendants Durrani and Levin's deviation from the standard of care was so great as to show indifference to another and an utter disregard or prudence that amounts to a complete neglect of the safety of Mr. Meade.

97.

As a result of Defendant Durrani and Levin's negligence Mr. Meade suffered, and continues to suffer, permanent disfigurement of his left hand, pain and suffering, and other permanent injury.

## COUNT VI
## GROSS NEGLIGENCE AS TO MR. MEADE'S RIGHT WRIST
### (State law claim against Durrani and Levin)

98.

Plaintiff fully incorporates paragraphs 1 through 81 and any paragraph this Court deems relevant as fully stated herein to support this Count.

99.

Based upon the facts incorporated into this Count, and any other paragraphs this Court deems relevant, Defendants Durrani and Levin committed medical malpractice by violating the standards of care applicable to both the assessment and treatment of Mr. Meade's left hand.

100.

Defendants Durrani and Levin's deviation from the standard of care was so great as to show indifference to another and an utter disregard or prudence that amounts to a complete neglect of the safety of Mr. Meade.

101.

As a result of Defendant Durrani and Levin's negligence Mr. Meade suffered, and continues to suffer, permanent disfigurement of his right wrist, pain and suffering, and other permanent injury.

**WHEREFORE**, Gregory Meade prays for a trial by jury of twelve and judgment against Defendants as follows:

(a) That process issue and service be had on each Defendant;

(b) That Plaintiff have Judgment against Defendants for all damages permissible at law;

(c) That Plaintiff be awarded all other expenses in an amount to be determined at trial, including special damages, and attorney fees;

(d) That Plaintiff recover all costs of this litigation;

(e) That a jury trial be had on all issues so triable;

(f) That Plaintiff have Judgment against Defendants for punitive damages; and

(g) That Plaintiff receives such other and further relief as this Court deems just and proper.

Respectfully submitted on this 2nd day of April 2021.

/s/MARIO WILLIAMS
Mario B. Williams
Ga # 235254

**NDH LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442/ 404-935-9391 FAX
mwilliams@ndh-law.com
*Counsel for Plaintiff*